Good afternoon, everyone. I'm glad to have an opportunity to hear three cases this afternoon. And the first case we're going to hear is Allied World v. Keating, Appellate No. 22-1996. May it please the Court, Guy and Knight, on behalf of the appellants, Allied World, and if I may, I'd like to reserve two minutes for rebuttal. Allied World alleged in its complaint that the defendant, Sean Keating, knowingly received thousands of dollars that her husband had embezzled from Allied World. The district court held that those allegations failed to state claims as a matter of law because that money had first been deposited into a bank account that the district court presumed was co-mingled. And that's one thing I wanted to ask you about is, is there anything in the complaint that tells us the monies into that account came from any source other than the four schemes that are described in the complaint? In the complaint, there's no allegations apart from the schemes that we described. I will say that one of the schemes involved money that was paid by another insurance company. But as we argued in our briefs and as we're arguing in the Connecticut court, and if we have the opportunity below here, that money that came from the other insurance company is nonetheless Allied World's money because it was acquired in breach of fiduciary duty. And apart from the presumption that the money was co-mingled, even if it were, the law allows Allied World to trace money into and through co-mingled bank accounts. And the third restatement on restitution and unjust enrichment in sections 41, 58, 59 lays out lots of rules and lots of cases where courts all over the country and indeed around the world have applied those tracing rules. And isn't you, don't you have an allegation in the complaint that says the tracing could be done without a problem because all the money came from the four schemes? We do have an allegation in that complaint. And do we have to accept that allegation as true? I certainly believe that Your Honors do have to accept that under the plausibility standard, yes. And I would also like to say that the decision that the district court made is actually a dangerous precedent, I do believe. Because it's not just extinguishing one plaintiff's claim against one defendant, which it did. It's also saying that an embezzler, a thief, can insulate the proceeds of his theft by depositing them into a bank account. That's all that it takes according to the district court's decision to make sure that the victim of embezzlement is unable to recover from a subsequent recipient. Well, the case law talks a little bit about unwittings and passive recipients for unjust enrichment purposes. The district court relied on that as its theory for why Mrs. Keating shouldn't have to be liable or disgorge any of this money, correct? Yes, Your Honor. But the law is, I think, pretty clear that even if Mrs. Keating were an innocent recipient, as in did not know that the money was allied worlds, still, at the very least, we have an unjust enrichment claim. And that's the Crossgates v. Moore case, where the court found that the wife really did not know that there was wrongdoing going on. The wife actually provided value for services. She was the real estate agent on the transaction. But even though everyone agreed she was innocent, she was still liable in unjust enrichment for the assets she received because of her husband's breach of fiduciary duty. There was quite a bit of commingling here, wasn't there? Yes. How were you going to unravel all that? So for the first part, as Your Honor asked at the beginning, we have not alleged that there was commingling. But assuming that there is commingling here, there are lots of rules that the courts have developed over the years to accomplish that tracing. So the Mushroom case, Henry Mushroom, that we cite in our briefs, actually goes through that in great detail. And in Part 3 of that decision, it sets out the Pennsylvania rules that it is going to follow. So our lowest intermediate balance and first in, first out, which are not unique Pennsylvania rules. Those are the rules that are applied pretty much everywhere, as far as I can tell. And even though in that case the results of the tracing didn't point towards the defendant, the point is they got to go to trial. They got to actually try to do the tracing. Here, as Your Honor, I believe, asked earlier, we have alleged that we can do the tracing. We just never had the opportunity to do that in the district court. What would you need to do that? I beg your pardon? What would you need to do the tracing? So we would need additional bank accounts because a lot of these, the bank account information we have is closed. But we do also need some additional discovery from Mrs. Keating. A lot of the money that the SR-5 account was used for were things that on the face of the bank account statement, we can't necessarily tell whether or not Mrs. Keating received a benefit from it. There's lots of cash withdrawals from ATMs. We don't know if Mrs. Keating was necessarily the recipient of all of that. So I believe that we do need additional discovery before we can do the full tracing analysis. But once we do that tracing analysis, I'm confident that we're going to be able to trace money to Mrs. Keating. Because, again, to get back to it, every single dollar that went into that SR-5 bank account, Allied World has at least alleged at this complaint, all of that money belongs to us from all of these various schemes. Could you tell us what kind of interest did Allied World have in the funds when the SR-5? Was it legal title? Was it an equitable claim? How do we understand that as whether it's enough of an interest to support a conversion claim? So I believe at the very least we had an equitable claim that we could recover in constructive trust or something like that from the money that went into SR-5. For the money that came from the American construction scheme, I think we actually have legal title to that money because it was disbursed, you know, for no value in exchange for services that were never provided through just straight-up fraud. But at the very least, I believe we have equitable title to all of the money that's in that account. There's one other aspect of the district court's decision below that I'd like to highlight, which is that for the unjust enrichment count, the court held not only that commingling prevented us from recovering, but also that double recovery prevented us from recovering. And, you know, I can say that I don't think under Rule 11 I could be standing at this podium seeking money that we had already collected from other sources, and I'm not. And Rule 8 allows us to plead inconsistent claims, even if somewhere down the road they might lead to double recovery. That's an issue for down the road. It's not an issue to be resolved against the plaintiff on a motion to dismiss, which is what the district court did here. There is one other case that I did want to draw your Honor's attention to. We did cite it in our briefs at page 22 to 23, but we didn't dwell on it. The Horanic case, this was a case where fiduciaries of a company stole metal and sold it to a scrap dealer. And the Superior Court of Pennsylvania held all that the plaintiff needed to allege was that the scrap dealer received assets that had been stolen. And another thing that I wanted to highlight from that case is that the recipient of the metal was a scrap metal dealer. By its very nature, by the time the case comes around, the metal, that's the chattel that was originally converted, is long gone. It's been fenced. Nonetheless, the plaintiff was entitled to advance a conversion claim against that dealer. And we believe the same rules require that result with respect to our claims against Mrs. Keating. If Stan was completely, totally unaware of James' scheme, would that be fatal to your case? No. And that's the Moore case, the Crossgates v. Moore, where the court below found, factually found, that the wife had no knowledge whatsoever that the transaction that was at issue was a breach of her husband's fiduciary duty. Well, if she's totally unaware, had no idea what was going on, how could she be implicated? In that case, the wife was totally unaware, and yet judgment was entered against her for unjustified enrichment. So even in a case where there is truly a totally innocent recipient, unjust enrichment can still proceed. And at the very least, that was judgment being entered. All that we're asking to do is to advance our claims past first base, to get past the pleadings. Just to get your money back. Just to get our money back, exactly. What's going on in the Connecticut case? It's odd. So summary judgment was denied in that case, and we will be filing another motion for summary judgment on, I believe, February 3rd. I expect, given the court's treatment of our first motion, it will be probably a trimmed down motion. And I believe that if there is a, if there's something left in the Connecticut case, and should your honors remand this action to the Eastern District of Pennsylvania, I do believe at that point it might be appropriate to consolidate the cases for further proceedings. But that depends on, one, us getting summary judgment, and two, the result of this case. Thank you. Good afternoon. If it please the Court, Pat Hennigan on behalf of C and Keating. Allied makes a rather large legal leap in advancing its arguments. That it has any type of claim to all of the money that went into SR 5. The allegations in the amended complaint are, number one, that Harleysville group paid Mr. Keating sums for doing work for Harleysville into that account, some $280,000. So while Allied may have a claim for damages, claiming Mr. Keating's fiduciary duties, they clearly have no legal or equitable claim to that money as it sat in the account. But do you agree, though, under the allegations in the complaint, the funds that went into the SR 5 account are limited to, and I understand Harleysville to be the competitor, am I correct? Correct, yes. The competitor, the kickback scheme, the Kodiak scheme, and the American construction scheme. That's, there's only four sources of funds that are in the account, correct? That is, as per the amended complaint, correct. So even if there are tracings that can be done to do what you're suggesting, that is some of those four work, rightful work performed, even if it was in breach, how can the tracing exercise occur on a pleading? Do you have a case where the district court or a trial court has applied to a pleading the tracing rules that you have to do in order to allow you to prevail? Well, I believe the opinion went further, and it held that the fund, that Allied had no claims to those funds. You're saying that district court held that? Yes, it said that Allied had no possessory interest at the time of the conversion. How was that proper? I mean, how can we decide on the pleadings that these funds aren't identifiable? I mean, the whole commingling would seem to be something where we've got to apply the rules, we've got to know the facts and the statements. District court couldn't properly do it at this stage. Well, the court made a distinction, I believe, as a matter of law, that the tracing wouldn't be appropriate because Allied had switched title, its possessory interest in these funds. But Judge, this question got at that. Do you have a case that says, as a matter of law, you're out of court before you even get to examining the first-in, first-out and lowest balance and all these other rules? Well, I have Judge Savage's opinion, but that is part of the decision below. You've got no authority that's done that. That is correct, yes. Now, the other thing about Judge Savage's opinion is Judge Savage's opinion seemed to be concerned about the policy problems of going after kitchen remodelers, et cetera, but there seem to be two big issues with that. One of them is the black-letter rule, good-faith purchaser of stolen goods or fraudulently obtained goods, doesn't take title and can be liable for conversion. I mean, the opinion doesn't really grapple with that. It fairly summarily dismisses the argument. And this is all assuming that your client is a good-faith purchaser, but Allied is alleging she's a bad-faith taker of stolen funds. And at this stage, we have to take their allegations as true. Well, there is no allegation that seeing Keating as a bad-faith actor that took funds, that they, in their briefs, I'm sorry, in their response to the motion, acknowledge that she is best passively benefited. But the allegations in the complaint that we have to accept include an allegation that she received monies that were noted as for work performed, but the inference from that is there's no work to perform for a fictitious company. So that's one point that we have to construe from the pleading at this stage. The second is there's an allegation about a meeting in, I think it was Florida, where there's an insinuation that there was discussion about the fraud scheme between Mr. Keating and the law firm, Mr. Cohen. And so we're stuck with the pleading, even if there might be a different characterization in the brief, that suggests she didn't engage in any kind of consideration in exchange for the funds she used, and suggestion that she was a knowing participant, not participant in the scheme, but a knowing recipient of ill-gotten funds. And I don't know how we get around that in the pleading. Well, once again, I think you return to Judge Savage's finding that allied, once again, may have rights against Cohen and Mr. Keating for the various schemes, that once the money transferred into SR-5 and then was transferred out, that allied lost its possessory interest once it was in SR-5. Wait a second. The allegations are that SR-5 is not a real business, correct? That this is a fraudulent scheme? Well, it acknowledges that it is part a very real business, because it was conducting business on behalf of Harley'sville. So there's an inconsistency in that statement. But there are allegations that SR-5 is not actually doing work that fairly deserves to be remunerated, right? That is insinuated, but it is acknowledged in the amended complaint that Mr. Keating through SR-5 did work for the Harley'sville group and was compensated to the extent of $280,000. I'm asking about Sean Keating. Sean. Sian. Sian gets a check for $2,000 for SR-5 work performed. She gets another $2,000 check simply for work. The allegation is she didn't do work for them. Also, the allegation is a check was written, and there was, we can't fairly infer that a check was written and it says work and it's written to her and that that means that she did work. That's not a reasonable inference from the facts pled? Not if you look at the whole scheme that is pled, that her husband, James Keating, is involved in millions. All right. I'd like to hear from your friend on rebuttal, Mr. Knight, about his interpretation of those allegations. Is it the case that this, the case itself really isn't advanced? Is it in other words? No, it isn't. This is really just beginning. Because there is a prior Connecticut action that discovery was taken, even though Mrs. Keating was not a party to that action, she was subpoenaed for records. She did respond to it. What I'm trying to get at is has there been any discovery in this case? Well, no, because it had already been advanced in the Connecticut. She had already turned over all of her bank accounts, tax records, any documents she had. Part of the case is in Pennsylvania? Yes, in the Eastern District. And there has been no discovery? That's correct. Just beginning? Correct. Yes. If I may address the Crossgates case that Mr. Knight advanced, that case is really distinguishable from this case. In that case, there's no question the Superior Court found that the wife was an innocent party. But the issue or the damages at issue related to a piece of real property. And in Pennsylvania, like most states, there's a presumption of uniqueness in real property. And in that case, what was sought was a constructive trust of that property. And it was clearly a unified interest that she owned. So in order to get any relief, it had to, the court had to include Mrs. Moore. But the principle in Crossgates, which was repeated in a case called Torchia v. Torchia, is the following. Unjust enrichment claims can proceed against unwitting innocent recipients of funds. And I don't think that the factual scenario out of which Crossgates or Torchia arise changed that point. And so doesn't it make it, put aside the conversion claim. I don't know how the, explain to me how the district court was correct in dismissing the unjust enrichment claim, even if we give you the best inferences in the world that she was an unwitting innocent. Well, once again, it returns to the fact, I believe Judge Savage made a determination as a matter of law that the transfer of the funds through the various schemes into SR5 extinguished allied's right. So Judge Savage. As soon as the wrongdoer can park the money in a new account, and no relief to the victim who's been defrauded. That would be the principle of law you'd like us to create. I think this is the money laundering law, right? Right. Money laundering law would find liability. You are correct. Yeah. Once again, I mean, we advance the argument before Judge Savage. He made the determination that it was not allied that conferred any benefit. We believe that that is correct. On the issue of double recovery, it's much like the case that we were asking if you knew a case as it related to dismissing on the pleadings based upon commingling. On the issue of double recovery, do you know a case where a judge dismissed other than Judge Savage, who we all respect and think very highly of, dismissed a case where double recovery was a possibility? And I ask that just to focus you, because you seem like an experienced trial lawyer. We're focused on usually liability first, damages later. Yes. So tell me how that could possibly be an appropriate ground to dismiss. We did not address that in our brief to try and support that finding as I believe that would be very tenuous. Thank you. Thank you. Okay. Thank you so much. Judge Bibas, in response to your question, you don't need to infer. Paragraph 89 of our complaint says, upon information and belief, Sean Keating, I beg your pardon, C.N. Keating. I haven't opposed her, so I don't know how she pronounces it. Mrs. Keating never provided work in exchange for these checks, nor did she provide legitimate services to SR-5 at any time. That she nonetheless accepted these payments confirms she was aware that SR-5 was being used for illicit purposes. And why do we know or why have we been allowed to allege that SR-5 was a bogus company? Well, in paragraph 35 and 36 of our complaint, we say it had no online, it had no offices, no operating agreement, no bylaws. It paid salaries to minor children. It had no business expenses. And the headquarters of this company was Mr. Keating's own home. Another thing that Mr. Hennigan raised was that property is unique, but money is not. Uniqueness is not a requirement for us to advance our claims. We do need to show that the money is identifiable, but we do not need to prove uniqueness. Finally, with respect to discovery, Mr. Hennigan said that Mrs. Keating had provided all of the bank records for all of her accounts. However, in the discovery that we served in this action, the first thing was an interrogatory asking her to actually identify all of her accounts. She never responded to that interrogatory. So we just don't know if the discovery we have is complete. There seem to be two distinct issues. One is, did the district court in this procedural posture properly exercise its discretion? And then the second is, well, even if it did, if we send the case back, what then happens to it with discovery? And we normally give district courts plenty of discovery if they're properly at the motion to dismiss to say, let's wait and resolve this first. But if it gets past the motion to dismiss at that point, you have a stronger case for discovery. Yes. So I don't disagree that the I beg your pardon. I see my lights on. I don't disagree that the discovery opinion will rise or fall with the motion to dismiss opinion. I just want to make sure that if we are able to go back and litigate this case, that we're able to do so fully. Thank you. I beg your pardon. Is that what you're requesting in this case, that you go back and relitigate it? Yes. We would like, well, not relitigate, to actually have the chance to litigate in the first place. Okay. Thank you. Thank you so much. Panel, thanks. Counsel for the very helpful arguments and briefing. And the court will take the matter under a vote.